UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRIS MARTINEZ,

    Plaintiff,

v.                                              Hon. Robert J. Jonker

CITY OF HOLLAND, et al.,                  Case No. 1:22-cv-516

    Defendants.
_____/

**REPORT AND RECOMMENDATION**

    This is a civil rights action under 42 U.S.C. § 1983 brought by a prisoner confined in a county jail. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A. The Court must read Plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, and pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **DISMISS** Plaintiff's complaint for failure to state a claim.

**I. Background**

    Plaintiff is presently incarcerated in the Allegan County Jail. Plaintiff sues the City of Holland and the following individuals, all of whom are police officers or detectives with the City of Holland Police Department: Unknown Ludema, Gustavo Calderon, Unknown Valenzuela,

Unknown Magdaleno, Unknown Spykerman, Jeremy Schoen, Unknown Bron, Jeff Klein, Derek Barrett, Unknown Rathjen, Unknown Wolters, Unknown Howe, and Rick Walters.

Although Plaintiff alludes to, but does not mention it in his complaint, publicly-available records show that Plaintiff pled *nolo contendere* to assault with a dangerous weapon, Mich. Comp. Laws § 750.82, in the Allegan County Circuit Court and was sentenced to three years imprisonment on March 7, 2022. The date of the offense was June 10, 2020. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=235431. According to the complaint, authorities identified Michael Lynn Varela as the victim. At the time, Varela was on parole from the Michigan Department of Corrections. (ECF No. 1 at PageID.7.)

Plaintiff alleges that on June 10, 2020, Varela assaulted Plaintiff and his "significant other," Billie Jean Valcoff. Plaintiff reported the assault to Defendant Spykerman by phone and told Spykerman that he and Valcoff wished to press charges against Varela. (*Id.* at PageID.6–7.) Defendants Ludema, Calderon, Valenzuela, Bron, and other officers responded to the scene. (*Id.* at PageID.8.)

The order of events at the scene is not entirely clear. Nonetheless, at some point after the officers arrived, Plaintiff and Valcoff voluntarily exited their apartment, thus fulfilling the purpose of the "extraction warrant" the officers had obtained. (*Id.* at PageID.10.) Eventually, Defendant Ludema had Valcoff sit at the picnic table on the front lawn of Plaintiff and Valcoff's apartment. At that time, Valcoff noticed the "spaded shovel" on the picnic table that she had earlier taken inside the apartment and placed behind the living room door. Plaintiff "has to believe and assume" that Ludema removed the "spaded shovel" from the apartment without a warrant. (*Id.* at PageID.9.) Later, the police report would identify a shovel as evidence collected from the picnic table in front of the apartments. (*Id.* at PageID.10.)

While interviewing Valcoff, the officers were not writing anything down, but they told her that they were recording her statements. (*Id.* at PageID.8.) During the questioning, Valcoff denied Defendant Ludema's request for consent to search the apartment. Defendants Ludema and Valenzuela then left the scene to obtain a search warrant. (*Id.* at PageID.10–11.)

Defendant Magdaleno was initially at the scene but left to take photos of Plaintiff, who had been taken to the hospital. On returning to the apartment, Magdaleno collected blood/DNA samples but would not explain what containment tools he used to gather and properly secure the samples. (*Id.* at PageID.11.) Magdaleno collected two blood/DNA samples from the outside surface of Valcoff's vehicle, but referenced only one sample in his subsequent report. Valcoff observed Magdaleno walk into the apartment without noticing, or ignoring, Plaintiff's blood/DNA on the sidewalk near the front door. Magdaleno's statement in his report that he recovered a wallet next to the apartment front door would have indicated that a struggle had occurred there and should have prompted Magdaleno to notice Plaintiff's blood/DNA where Varela had stabbed Plaintiff with the "spaded shovel." (*Id.* at PageID.12–13.) Magdaleno's report states that he photographed blood droplets in the living room area and kitchen, but does not mention that he took blood/DNA swabs from just inside the entryway of the apartment. (*Id.* at PageID.13.)

Defendant Ludema never asked Magdaleno to test the tip of the "spaded shovel" that Varela used to stab Plaintiff. Magdaleno chose not to take a closer look at the shovel with the macrolens of his camera. However, Magdaleno chose to take a closer look with his macrolens at the drops of blood on the handle and blade of a retractable knife that Defendant Calderon found inside a drawer in Plaintiff's bedroom. Magdaleno and Defendant Calderon both state in the criminal complaint against Plaintiff that they saw red spots/blood on the utility knife. Plaintiff "knows and believes" that Magdaleno planted blood from the second blood/DNA sample he collected from Valcoff's

3

vehicle but did not mention in his police report. His proof, he says, is that Magdaleno and Calderon never state that "blood was running from these blood drops," which would have been the case if the knife had been used in the crime. Plaintiff asserts that Magdaleno and Calderon "should have included [in their reports] that there was in fact blood running from the blood drops they officially state to have seen on this utility knife." (*Id.* at PageID.14–16.)

Plaintiff alleges that "the crime scene was not properly preserved and secured right from the start," and that all individual defendants either directly or indirectly participated and were grossly and criminally negligent in creating, staging, and falsifying criminal evidence at the crime scene and during the investigation. (*Id.* at PageID.16–17.)

For relief, Plaintiff seeks compensatory damages and requests that the Court declare that: (1) Defendants Ludema, Calderon, Valenzuela, Magdaleno, and Spykerman violated his Fourth Amendment rights by attempting to detain him and by illegally searching his residence; (2) Defendants failed to protect him and denied his request to file formal police charges against Varela; (3) Defendants Ludema, Calderon, Valenzuela, Magdaleno, and Spykerman "deliberately arrange[d] unlawful[] crime scene evidence that is supported by their own official police statements;" and (4) Defendants Ludema, Calderon, Valenzuela, Magdaleno, Spykerman and other unidentified Defendants violated Plaintiff's Fourteenth Amendment right to due process.

## II. Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal citations and footnote omitted).

As the Supreme Court has held, to satisfy this rule, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not "show[n]"—"that the pleader is entitled to relief."

*Id.* at 678–79 (internal citations omitted).

### III. Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. City of Holland

Plaintiff's claim against the City of Holland fails because a local government such as a municipality or county "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality may be held liable under Section 1983 only when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35-37 (2010) (citing *Monell*, 436 U.S. at 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-09. Plaintiff's claim fails at the first step because he has not alleged or identified a policy or custom of the City that caused the alleged injury. Instead, his allegations focus exclusively upon the acts of the individual police officer/detective Defendants. Plaintiff does not allege that any of these acts occurred as a result of, or pursuant to, a municipal policy or custom.

Therefore, the claim against the City of Holland should be dismissed.

### B. Lack of Personal Involvement

A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See, e.g.*, *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir. 1982). "Plaintiff must state a plausible constitutional violation against each individual defendant—the collective acts of defendants

cannot be ascribed to each individual defendant." *Reilly v. Vadlamudi*, 680 F.3d 617, 626 (6th Cir. 2012). In short, a "plaintiff must plead and prove that the defendant was personally involved in the activity that forms the basis of the complaint." *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272 (W.D. Mich. 1991); *see also Heyne v. Metropolitan Nashville Pub. Schs.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (internal quotation marks omitted)).

Here, Plaintiff has included Defendants Schoen, Klein, Barrett, Rathjen, Wolters, Howe, and Walters in the complaint but has not alleged any fact as to these Defendants plausibly suggesting that they violated his constitutional rights. Plaintiff identifies them as parties, but does no more. Accordingly, I recommend that the Court dismiss Defendants Schoen, Klein, Barrett, Rathjen, Wolters, Howe, and Walters for failure to allege their personal involvement in the alleged violations.

    **C.**    **Failure to File Charges Against Varela**

Plaintiff alleges that Defendants failed to protect him and Valcoff, in violation of their rights under the Fifth Amendment, when they denied Plaintiff and Valcoff's request to file formal charges against Varela.[1] (ECF No. 1 at PageID.19.) Initially, for the reasons immediately set forth above, Plaintiff's reference to "Defendants" as a group fails to state a plausible claim under Section 1983. The only Defendant to whom Plaintiff alleges he made a request to file formal charges is Defendant Spykerman. (*Id.* at PageID.7.)

---

[1] The Fifth Amendment's Due Process Clause applies to the federal government, while the Fourteenth Amendment's Due Process Clause applies to the States. *See generally Sturgell v. Creasy*, 640 F.2d 843, 850 (6th Cir. 1981); *Walker v. Hughes*, 558 F.2d 1247, 1257 (6th Cir. 1977).

Regardless, Plaintiff's claim fails because it is well established that a private citizen lacks a "judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Leeke v. Timmerman*, 454 U.S. 83, 86–87 (1981) (holding that inmates lacked standing to sue state correctional officials for interfering with issuance of arrest warrants for the prosecution of prison guards for use of unnecessary force against the inmates during a prison uprising because the decision to prosecute was solely within the prosecutor's discretion). As the Tenth Circuit has observed:

> The ordinary citizen does not have a general interest justifying a lawsuit based on the criminal prosecution or non-prosecution of another. Such a right is not recognized in the law and, indeed, it would be contrary to public policy to allow every private citizen to force the prosecutor to proceed with a case in pursuit of a private objective. The district attorney is sworn to uphold the law generally and does not have a duty to enforce the law for the purpose of providing satisfaction to a third person who has no direct legal interest.

*Dohaish v. Tooley*, 670 F.2d 934, 937 (10th Cir. 1982) (internal citation omitted); *see also Smallwood v. McDonald*, No. 86-5522, 1986 WL 18183, at *1 (6th Cir. Oct. 9, 1986); *Sattler v. Johnson*, 857 F.2d 224, 227 (4th Cir. 1988) ("Sattler's counsel suggested that Sattler had an enforceable right as a member of the public at large and as a victim to have the defendants criminally prosecuted. . . .There is, of course, no such constitutional right. . . .").

Even though a citizen lacks a cognizable interest in the prosecution of another, courts have held that a constitutional violation may be established if the plaintiff alleged that the failure to investigate or prosecute was based on an impermissible reason, such as race or other characteristic that would implicate the guarantee of equal protection. *See Burchett v. Self*, No. 94-5058, 1994 WL 276865, at *2 (6th Cir. June 21, 1994). In *Bowers v. DeVito*, 686 F.2d 616 (7th Cir. 1982), for example, the Seventh Circuit affirmed that the Due Process Clause of the Fourteenth Amendment does not compel the state to protect its citizens against harm from "criminals or madmen," but "[d]iscrimination in providing protection against private violence could of course violate the equal

8

protection clause of the Fourteenth Amendment." *Id.* at 618. Plaintiff alleges in paragraphs 28 and 29 of his complaint that at the time of the incident, Valcoff was legally disabled, and he "believes [he] and his significant other were discriminately denied equal protection . . . by . . . Officer Spykerman." (*Id.* at PageID.8.) While Plaintiff does allege discrimination in violation of the equal protection clause, his allegation is nothing more than a bare legal conclusion, which, even under the generous standard applicable to pro se pleadings, falls far short of what is required to "nudge[] [his] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### D. Fabrication of Evidence/Negligent Investigation

Plaintiff alleges that Defendants Ludema, Calderon, Valenzuela, Magdaleno, and Spykerman "knowingly, deliberately arrange[d] unlawfully crime scene evidence." (*Id.* at PageID.16–17, 19.) As an initial matter, Plaintiff's only allegations regarding fabrication of evidence are limited to Defendants Calderon and Magdaleno. (*Id.* at PageID.15–16.) Thus, this claim fails as to Defendants Ludema, Valenzuela, and Spykerman for lack of any factual allegations implicating them in the alleged wrongdoing.

Turning to the merits of the fabrication claim, Plaintiff's reliance on the Eighth Amendment is misplaced, as that amendment applies only to convicted prisoners in the prison setting. *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983). Nonetheless, prosecution and conviction based on fabricated evidence violates an individual's Fourteenth Amendment due process rights. *Spurlock v. Satterfield*, 167 F.3d 995, 1005–06 (6th Cir. 1999). However, Plaintiff's allegations of fabrication remain insufficient under applicable pleading standards to allege a plausible claim. "The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th

Cir. 2007) (italics in original) (citing *Twombly*, 550 U.S. at 555–56.) Here, Plaintiff's unsupported conclusion about what Defendants Magdaleno and Calderon should have included in their official police reports if they had in fact seen blood drops on the utility knife is nothing more than Plaintiff's unwarranted speculation that does not show entitlement to relief.

Plaintiff's fabrication claim also fails because it is barred by the *Heck* doctrine.[2] *See Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). The *Heck* doctrine holds that, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. at 486–87 (footnote omitted). Here, Plaintiff does not allege that his conviction has been reversed, expunged, or otherwise invalidated, while Plaintiff's fabrication/planting of false evidence claim directly challenges the constitutionality of his underlying conviction. That is, Plaintiff alleges that Defendants planted blood/DNA drops on the utility knife Plaintiff allegedly used to attack Varela. Accordingly, *Heck* bars Plaintiff's fabrication claim as it necessarily implies the invalidity of his conviction. *See Franklin v. Fisher*, No. 16-6464, 2017 WL 4404624, at *4 (6th Cir. May 15, 2017) (affirming PLRA screening dismissal of the plaintiff's claims asserting fabrication of evidence and police misconduct as barred by *Heck*).

As noted, Plaintiff also alleges that Defendants (again, he does not identify who) failed to properly preserve and secure the crime scene. This allegation is essentially one of negligence by

---

[2] The Sixth Circuit applies the *Heck* rule to *nolo contendere* pleas. *See Cummings v. City of Akron*, 418 F.3d 676, 683–84 (6th Cir. 2005).

10

the police in the conduct of their investigation. Such an allegation does not amount to a constitutional violation. *See Garner v. Harrod*, 656 F. App'x 755, 761 (6th Cir. 2016) ("[A]ssuming that the plaintiffs provided sufficient facts to establish that the investigation was incompetent or negligent, an 'incompetent or negligent investigation' is insufficient to establish a constitutional violation." (quoting *Seigel v. City of Germantown*, 25 F. App'x 249, 250 (6th Cir. 2001)). Accordingly, Plaintiff's claim of negligent or deficient investigation also fails.

### E.     Fourth Amendment Claim

Last, Plaintiff alleges that Defendants Ludema, Calderon, Valenzuela, Magdaleno, and Spykerman detained him and illegally searched his apartment in violation of the Fourth Amendment. The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. Am. IV. "Reasonableness is the key, the existence of a warrant often its measure. A warrantless search of a home or business is presumptively unreasonable." *Benjamin as Tr. of Rebekah C. Benjamin Tr. v. Stemple*, 915 F.3d 1066, 1069 (6th Cir. 2019) (citing *Kentucky v. King*, 563 U.S. 452, 459 (2011)).

Plaintiff fails to allege a plausible Fourth Amendment claim. To begin, he alleges no fact indicating that any Defendant unlawfully seized him without a warrant. His only allegation is a legal conclusion. (ECF No. 1 at PageID.19.) Moreover, Plaintiff alleges that the officers had an "extraction warrant." In addition, his allegation of an illegal search is premised upon speculation and conjecture, not factual allegations. "[B]eliev[ing] and assum[ing]" that Defendant Ludema removed the "spaded shovel" from the apartment without a warrant, which is what Plaintiff alleges (*id.* at PageID.9), is based on nothing more than Plaintiff's speculation or suspicion. *Bredesen*, 500 F.3d at 527. Plaintiff alleges no fact plausibly establishing that Defendant Ludema (or any other officer) searched his apartment without a warrant. Plaintiff does not allege that he or Valcoff saw

11

any officer enter their apartment without a warrant, and Plaintiff admits that Ludema and Valenzuela left the scene to obtain a warrant after Valcoff refused consent to search. (*Id.* at PageID.10–11.)

Accordingly, I recommend that the Court dismiss Plaintiff's Fourth Amendment claim as insufficient under *Twombly*.

### F.    Non-Parties

Plaintiff has not specifically named Supervisory Parole Agent Deanna Bustillos or 58th District Court Judge Susan Jonas as Defendants in this action. Nonetheless, he identifies them in paragraphs 59 and 60 of his complaint and alleges that they violated his constitutional rights. To the extent the Court considers Bustillos and Jonas parties to this action, Plaintiff's claims are subject to dismissal.

First, Plaintiff alleges that Parole Agent Bustillos was deliberately indifferent and grossly negligent in not detaining and returning Varela to prison, as there was an outstanding "domestic violence" warrant for his arrest at the time he assaulted Plaintiff and Valcoff. Plaintiff alleges that Bustillos violated his Fifth Amendment rights by failing to protect him, Valcoff, and society in general from such a dangerous criminal as Varela. (*Id.* at PageID.17–18.) This claim fails as a matter of law. The Supreme Court has made clear that "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). Nonetheless, relying on language in *DeShaney*, the Sixth Circuit has recognized that public officials may be held liable for "caus[ing] or greatly increase[ing] the risk of harm to its citizens without due process of law through its own affirmative acts." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1066 (6th Cir. 1998). To establish liability under the "state-created danger" theory, a plaintiff must show:

> 1) an affirmative act by the state which either created or increased the risk that the plaintiff would be exposed to an act of violence by a third party; 2) a special danger to the plaintiff wherein the state's actions placed the plaintiff specifically at risk, as distinguished from a risk that affects the public at large; and 3) the state knew or should have known that its actions specifically endangered the plaintiff.

*Cartwright v. City of Marine City*, 336 F.3d 487, 493 (6th Cir. 2003) (citing *Kallstrom*, 136 F.3d at 1066).

Plaintiff fails to allege any of the elements required for this claim. First, Parole Agent Bustillos's failure to return Varela to prison was not an affirmative act. Plaintiff simply alleges that Bustillo failed to do something—detain and return Varela to prison. "[F]ailure to act is not an affirmative act under the state-created danger theory." *Id.* Moreover, as stated in *Jones v. Reynolds*, 438 F.3d 685 (6th Cir. 2006), even if the line between action and inaction is not entirely clear, the Sixth Circuit has "always treated governmental conduct as falling on the inaction side of the line when it does not create or increase the risk of peril posed by the private actor." *Id.* at 692 (internal brackets, citations, and quotation marks omitted). Here, the line is clear: Plaintiff alleges, at most, inaction. Parole Agent Bustillos's alleged inaction thus did not increase the extant risk of peril that Varela posed to anybody. Plaintiff's claim also fails on the second and third elements of a "state-created danger" claim. At best, Plaintiff only alleges facts creating an inference that Varela posed a risk of harm to the public at large, rather than a special danger specifically to Plaintiff. Moreover, Plaintiff alleges no fact even hinting that Parole Agent Bustillos knew or should have known that failing to detain Varela specifically endangered Plaintiff. *See Pung v. Mich. Dep't of Corrs.*, No. 1:13-cv-1031, 2015 WL 1459440, at *6–8 (W.D. Mich. Mar. 30, 2015) (holding that the plaintiff failed to state a claim against parole agent and others for releasing prisoner with history of parole violations for work release, who subsequently murdered the plaintiff's decedent, because the plaintiff failed to allege an affirmative act increasing the danger, as well as special danger and the defendants' knowledge of such risk specifically to the decedent as opposed to the general public);

13

*Drinkard v. Michigan Dep't of Corrs.*, No. 12-14598, 2013 WL 3353935, at *4–5 (E.D. Mich. July 3, 2013) (concluding that the plaintiff failed to state a claim that parole officers failed to supervise parolees who had been released from Michigan prisons and murdered the plaintiff's decedent as the plaintiff failed to allege that the state created a special harm to the decedent as opposed to the public at large). Finally, *Heck* would bar this claim as well because, as the matter stands, Plaintiff, not Varela, was the perpetrator of the crime who inflicted the injury, and not vice versa. Success on this claim would thus call into question the validity of Plaintiff's conviction.

Second, as for Judge Jonas, Plaintiff says that she was biased against him in favor of the Holland Police Department and prosecutors because she allowed the preliminary examination to proceed without Varela being present for cross-examination. Plaintiff contends that this violated his Fifth and Fourteenth Amendment rights. This claim fails for a number of reasons, but only two need be discussed. First, to the extent Plaintiff intends this as a claim against Jonas in her individual capacity, it is barred by absolute judicial immunity. It is well established that a judge is absolutely immune from suit seeking monetary relief, so long as the judge was performing judicial functions. *See Mireles v. Waco*, 502 U.S. 9, 9–10 (1991). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages." *Id.* at 11. The "immunity applies to actions brought under 42 U.S.C. § 1983 to recover for alleged deprivation of civil rights." *Stern v. Mascio*, 262 F.3d 600, 606 (6th Cir. 2001). A judge is not immune (1) where the judge's alleged actions were not taken in the judge's judicial capacity, or (2) where the actions, although judicial in nature, were taken in the complete absence of jurisdiction. *Mireles*, 502 U.S. at 11–12. "[T]he scope of the judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. A judge will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of his authority; rather, [s]he will be subject to liability only when

14

[s]he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (quoting Bradley v. Fisher, 80 U.S. 335, 351 (1871)). Here, it is clear that Judge Jonas was acting well within her judicial capacity in conducting the preliminary examination. Thus, she is entitled to absolute immunity. Second, the claim is also barred by *Heck*, as success on this claim would necessarily call into question the validity of Plaintiff's conviction.[3] *See Manns v. Hood*, No. 7:10-CV-130, 2010 WL 4608313, at *2 (E.D. Ky. Nov. 4, 2010).

### IV. Conclusion

For the foregoing reasons, I recommend that the Court dismiss Plaintiff's complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A for failure to state a claim. I further recommend that Plaintiff's motion to appoint counsel (ECF No. 4) be denied.

The Court must also decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Good faith is judged objectively, *Coppedge v. United States*, 369 U.S. 438, 445 (1962), and an appeal is not taken in good faith if the issue presented is frivolous, defined as lacking an arguable basis either in fact or law. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). For the same reasons that I recommend dismissal of the action, I discern no good faith basis for an appeal and recommend that, should Plaintiff appeal this decision, the Court assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11.

Finally, if the Court adopts the foregoing recommendation to dismiss, the dismissal will be a dismissal as described by 28 U.S.C. § 1915(g).

---

[3] In addition, *United States v. Broce*, 488 U.S. 563 (1989), and *Tollett v. Henderson*, 411 U.S. 258 (1973), which establish that an unconditional no-contest plea operates as a waiver of all non-jurisdictional defects occurring before the plea, would bar any such claim in a habeas proceeding. *See Smith v. Bauman*, No. 16-1545, 2017 WL 5135543, at *2 (6th Cir. Jan. 31, 2017).

Date:  July 18, 2022                                        /s/ Sally J. Berens
                                                                           SALLY J. BERENS
                                                                           U.S. Magistrate Judge

## NOTICE

      OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).